MAVCmosP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

             v.                          21 Cr. 92 (JPO)(BCM)

YURY MOSHA,

                 Defendant.

------------------------------x

                                    New York, N.Y.
                                    October 31, 2022
                                    12:00 p.m.


Before:

                    HON. BARBARA C. MOSES,

                                    Magistrate Judge

                         APPEARANCES

DAMIAN WILLIAMS,
     United States Attorney for the
     Southern District of New York
BY:  JONATHAN REBOLD
     Assistant United States Attorney

VADIM GLOZMAN
     Attorney for Defendant

ALSO PRESENT:
     RUSSELL LANTIER, Special Agent FBI
     KONSTANTIN GARNOV, Russian Interpreter

MAVCmosP

1          (Case called)

2          MR. REBOLD:  Good afternoon, Judge Moses.  Jonathan

3     Rebold for the government.  I'm joined at counsel table by

4     Special Agent Russell Lantier with the Federal Bureau of

5     Investigation.

6          MR. GLOZMAN:  Good afternoon, your Honor.  Vadim

7     Glozman on behalf of Yuri Mosha, who is present to my right,

8     with the assistance of the Russian-speaking interpreter.

9          THE COURT:  Mr. Glozman, Mr. Mosha, please be seated.

10         Mr. Mosha, are you able to hear and understand counsel

11    and me through the interpreter?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Thank you.  Counsel, I understand we are

14    here for a change of plea.  I am told that your client, having

15    previously pleaded not guilty, now wishes to enter a plea of

16    guilty to Count One of the indictment in this matter.  Is that

17    your understanding?

18         MR. GLOZMAN:  That is, your Honor.

19         THE COURT:  The first thing we are going to need then

20    is the consent form for the magistrate judge.  There it is.

21         Mr. Mosha, I am handing up a document entitled consent

22    to proceed before a United States Magistrate Judge on a felony

23    plea allocution.  It looks like you have signed it today.  Did

24    you sign this document today?

25         THE DEFENDANT:  Yes.

MAVCmosP

| 1 | | THE COURT:  What this form says is that you know you |
| 2 | | have a right to have your plea taken by a United States |
| 3 | | District Judge, but you're agreeing to have your plea taken by |
| 4 | | a United States Magistrate Judge, which is what I am. |
| 5 | | As a magistrate judge, I have the authority to take |
| 6 | | your plea with your consent and you have all of the same rights |
| 7 | | as if you were before a district judge.  If you are found |
| 8 | | guilty, you will be sentenced by the district judge assigned to |
| 9 | | your case. |
| 10 | | Did you sign this consent form voluntarily? |
| 11 | | THE DEFENDANT:  Yes. |
| 12 | | THE COURT:  And before you signed it, did your |
| 13 | | attorney explain it to you? |
| 14 | | THE DEFENDANT:  Yes. |
| 15 | | THE COURT:  Does your attorney speak Russian or did |
| 16 | | that happen through an interpreter? |
| 17 | | THE DEFENDANT:  He speaks Russian. |
| 18 | | THE COURT:  Excellent.  Do you wish to proceed with |
| 19 | | your plea today before me? |
| 20 | | THE DEFENDANT:  Yes. |
| 21 | | THE COURT:  I will accept your consent. |
| 22 | | So I'll now ask you, Mr. Mosha, directly.  You heard |
| 23 | | me ask your lawyer whether you wish to change your plea and |
| 24 | | enter a plea of not guilty.  Is that, in fact, what you wish to |
| 25 | | do today? |

MAVCmosP

1        THE DEFENDANT:  Yes.

2        THE COURT:  Before deciding whether to accept a guilty

3  plea from you, I need to ask you certain questions.  It's

4  important that you answer my questions honestly and completely.

5  The purpose of the questions is to make sure that you

6  understand your rights, to make sure that you're pleading

7  guilty of your own free will, and to make sure that you're

8  pleading guilty because you are guilty and not for some other

9  reason.

10        Do you understand what I'm saying?

11        THE DEFENDANT:  Yes.

12        THE COURT:  If you don't understand any question that

13  I ask you or if you simply want some time to consult with your

14  lawyer, please let me know and I will give you as much time as

15  you need because it is important that you understand every

16  question before you answer.

17        I will now ask the courtroom deputy to place the

18  defendant under oath.

19        (Defendant sworn)

20        THE DEPUTY CLERK:  Please state your name for the

21  record.

22        THE DEFENDANT:  Yuri Mosha.

23        THE COURT:  Mr. Mosha, you are now under oath.  What

24  that means, among other things, is that if you give an

25  intentionally false answer to any of my questions, you could be

MAVCmosP

```
 1   prosecuted for perjury.

 2              How old are you, Mr. Mosha?

 3              THE DEFENDANT:  46.

 4              THE COURT:  46 years old.  You need not rise for the

 5   questions and the answers.  You may remain seated.

 6              Are you a citizen of the United States?

 7              THE DEFENDANT:  No.

 8              THE COURT:  What country are you a citizen of?

 9              THE DEFENDANT:  Russia.

10              THE COURT:  How far did you go in school?

11              THE DEFENDANT:  Completed college, economics.

12              THE COURT:  You have a university degree?

13              THE DEFENDANT:  Yes.

14              THE COURT:  I take it you can read and write in

15   Russian without difficulty?

16              THE DEFENDANT:  Yes.

17              THE COURT:  Are you now or have you recently been

18   under the care of a doctor, including a psychologist or a

19   psychiatrist for any reason?

20              THE DEFENDANT:  Yes, and I'm still, but I'm good now.

21              THE COURT:  What kind of doctor has been treating you?

22              THE DEFENDANT:  Psychologist and a psychiatrist.

23              THE COURT:  Did that doctor give you a psychological

24   diagnosis?

25              THE DEFENDANT:  Yes.
```

MAVCmosP

1            THE COURT:  What diagnosis or what diagnoses did he

2    give or did she give?

3            THE DEFENDANT:  Depression.  I don't remember exactly

4    the medical term for that.

5            THE COURT:  But you recall that the diagnosis was

6    something along the lines of depression?

7            THE DEFENDANT:  Yes.

8            THE COURT:  And are you taking medication for that

9    condition?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Do you remember the name of the

12   medication?

13           THE DEFENDANT:  Seroquel.  Lamictal -- I can look it

14   up later.

15           THE COURT:  In English, I'm thinking Lamictal.  That's

16   a common --

17           THE DEFENDANT:  Something like that.

18           THE COURT:  And that's a depression medication?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Anything else?

21           THE DEFENDANT:  No.

22           THE COURT:  Do you have any condition that affects

23   your ability to see or to hear?

24           THE DEFENDANT:  No.

25           THE COURT:  Do you have any condition that affects

MAVCmosP

```
1   your ability to think or to understand or to make judgments or
2   decisions on your own behalf?
3                THE DEFENDANT:  No.
4                THE COURT:  Does the medication that you've been
5   prescribed for depression interfere with your ability to think
6   or to understand or to make judgments and decisions on your own
7   behalf?
8                THE DEFENDANT:  No.
9                THE COURT:  In the last 24 hours, other than the
10  medication you already mentioned to me, have you taken any
11  drugs, medicine, or pills with or without a prescription?
12               THE DEFENDANT:  No.
13               THE COURT:  In the last 24 hours, have you consumed
14  any alcohol?
15               THE DEFENDANT:  No.
16               THE COURT:  Is your mind clear today?
17               THE DEFENDANT:  Yes.
18               THE COURT:  Do you understand what is happening in
19  this proceeding?
20               THE DEFENDANT:  Yes.
21               THE COURT:  Does either counsel have any objection to
22  the defendant's competence to plead?
23               MR. REBOLD:  The government has no objection.
24               MR. GLOZMAN:  None, your Honor.
25               THE COURT:  Thank you, counsel.
```

MAVCmosP

1                  Mr. Mosha, have you received a copy of the indictment
2       in your case?
3                  THE DEFENDANT:  Yes.
4                  THE COURT:  That's the document, the written document
5       containing the charges against you.  Did you read it or did
6       someone read it to you in Russian?
7                  THE DEFENDANT:  My attorney read it to me and I read
8       it myself.
9                  THE COURT:  Was a copy translated into Russian for
10      you?
11                 THE DEFENDANT:  I translated it myself.
12                 THE COURT:  You have enough English to translate it
13      yourself?
14                 THE DEFENDANT:  Yes, I can read.  I have difficulty
15      speaking.
16                 THE COURT:  Would you like me to read the indictment
17      to you today and have it translated by our interpreter here in
18      court?
19                 THE DEFENDANT:  No.
20                 THE COURT:  Do you understand what the indictment says
21      you did?
22                 THE DEFENDANT:  Yes.
23                 THE COURT:  And have you had time to talk with your
24      attorney about the charges and about how you wish to plead?
25                 THE DEFENDANT:  Yes.

MAVCmosP

1          THE COURT:  Has your attorney explained the

2   consequences of pleading guilty?

3          THE DEFENDANT:  Yes.

4          THE COURT:  What I'm going to do next is I'm going to

5   explain certain constitutional rights, which you have, but

6   which you will be giving up if you enter a guilty plea.  So

7   please listen carefully to what I'm about to tell you.  If you

8   don't understand something, you can stop me, and either I or

9   your attorney will explain the matter more fully.

10          Will you do that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Under the Constitution and laws of the

13   United States, you have a right to plead not guilty to all of

14   the charges against you.

15          Do you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  If you plead not guilty, you will be

18   entitled, under the Constitution and laws of the United States,

19   to a speedy and public trial by jury.  At trial, you would be

20   presumed innocent.  The government would be required to prove

21   you guilty beyond a reasonable doubt before you could be found

22   guilty.  You could not be convicted unless a jury of 12 people

23   agreed unanimously that you were guilty beyond a reasonable

24   doubt.

25          Do you understand that?

MAVCmosP

1          THE DEFENDANT:  Yes.

2          THE COURT:  If you decided to go to trial, you would

3    be entitled to an attorney at trial and, in fact, at every

4    stage of your case.  If you could not afford one, an attorney

5    would be appointed to represent you at the government's

6    expense.  Even if you retained private defense counsel, as I

7    understand you have -- you're retained, correct, counsel?

8          MR. GLOZMAN:  Correct, your Honor.

9          THE COURT:  Even if you started with your private

10   defense counsel but ran out of money, an attorney would be

11   appointed to represent you at that time.  You would be entitled

12   to an attorney all the way through trial and not just for a

13   guilty plea.  So your decision to plead guilty should not

14   depend on whether you can afford to hire a lawyer.

15          Do you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  During trial, the witnesses for the

18   prosecution would have to come to court and testify in your

19   presence where you could see them and hear them and your lawyer

20   could cross examine them.  Your lawyer could also offer

21   evidence on your behalf and he would be able to use the court's

22   power, known as subpoena power, to compel witnesses to come to

23   court to testify, even if they did not want to be there.

24          Do you understand that?

25          THE DEFENDANT:  Yes.

MAVCmosP

```
 1                THE COURT:  At trial, you would have the right to

 2      testify in your own defense if you wished to.  You would also

 3      have the right not to testify.  If you chose not to testify,

 4      that could not be used against you in any way.  No inference or

 5      suggestion of guilt would be permitted from the fact that you

 6      did not testify.

 7                Do you understand that?

 8                THE DEFENDANT:  Yes.

 9                THE COURT:  If you were convicted at trial, you would

10      have the right to appeal that verdict to a higher court.

11                Do you understand that?

12                THE DEFENDANT:  Yes.

13                THE COURT:  And, as I said before, you have the right

14      to plead not guilty.  Even today, although you came to court

15      for the purpose of entering a guilty plea, you have the right

16      to change your mind, to persist in your guilty plea, and to

17      proceed toward trial, but if you do plead guilty and if the

18      Court accepts your plea, you will give up the right to a trial

19      and the rights that go with it that I just described to you.

20      If you plead guilty, there will not be any trial.  All that

21      will remain to be done will be to impose a sentence upon you.

22      You and the government will have a chance to make certain

23      arguments as to what that sentence will be, but there won't be

24      any trial to determine whether you are guilty or not guilty of

25      the charge to which you have pled guilty.
```

MAVCmosP

1          Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Do you also understand that the decision

4   as to the appropriate sentence in your case will be entirely up

5   to the sentencing judge — in your case, Judge Oetken — and that

6   he will be limited only by what the law requires?

7          THE DEFENDANT:  Yes.

8          THE COURT:  This means that even if you're surprised

9   or disappointed by your actual sentence, you will still be

10  bound by your guilty plea.

11         Do you understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Finally, if you do plead guilty, you are

14  also giving up the right to remain silent.  You are giving up

15  the right not to incriminate yourself.  I will ask you

16  questions about what you actually did in order to satisfy

17  myself that you are, in fact, guilty.  So, by pleading guilty,

18  you will be admitting what lawyers call your factual guilt as

19  well as your legal guilt.

20         Do you understand that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Count One of the indictment charges you

23  with a conspiracy to defraud the United States and to commit

24  immigration fraud in violation of Title 18 of the United States

25  Code, Sections 371 and 1546.

MAVCmosP

1          I'm going to ask Mr. Rebold, the Assistant United

2    States Attorney, to state the elements of that charge.  The

3    elements are the things the government would have to prove to

4    convict you of that crime.

5          MR. REBOLD:  Yes, your Honor.  Just to forewarn you,

6    they're a little bit lengthier than normal just because there

7    is really three objects.  The object to defraud the United

8    States, which, as your Honor said, is the conspiracy, which is

9    known as client conspiracy, and then there are two separate

10   paragraphs applicable under Title 18, United States Code,

11   1546(a) in two separate ways in which the defendant was alleged

12   to have committed immigration fraud or conspired to do so.

13          THE COURT:  Go ahead.

14          MR. REBOLD:  So, the relevant elements are as follows:

15          First, for any conspiracy under Title 18, United

16   States Code, Section 371, the government would need to

17   establish beyond a reasonable doubt that:

18          First, there was an agreement by the defendant and one

19   or more persons to combine efforts to achieve an illegal

20   purpose or to use illegal means to accomplish the illegal

21   purpose; and

22          Second, that at least one act was taken in furtherance

23   of the conspiracy.

24          Here, the elements for the first object, client

25   conspiracy, would require that the government specifically

MAVCmosP

establish that the above described agreement was designed to

obstruct lawful government function by deceitful or dishonest

means.

The element for committing immigration fraud under

Title 18, United States Code, 1546(a) under the first paragraph

of that subsection, which is obtaining a document under

fraudulent pretenses, are as follows:

First, the defendant conspired to obtain a form I94,

which is a document proscribed by statute or regulation which

provides evidence of authorized stay in the United States as

alleged in the indictment;

Second, that the document in question was procured by

means of a false statement or fraud; and

Third, that the defendant knew that the document was

procured by a means of a false statement or procured by fraud.

Regarding the elements for the fourth paragraph of

Title 18, United States Code, 1546(a), which is swearing to

false statements on applications for asylum, the elements are

as follows:

First, the defendant made a false statement;

Second, the defendant acted with knowledge that the

statement was untrue;

Third, that the statement was material to the

activities or decisions of the United States Department of

Homeland Security or the Executive Office for Immigration

1    Review of the United States Department of Justice;

2            Fourth, that the statement was made under penalty of

3    perjury; and

4            Fifth, that the statement was made on the application

5    required by immigration laws or regulations.

6            Finally, the government would need to prove venue by a

7    preponderance of the evidence.

8            THE COURT:  Thank you, Mr. Rebold.

9            Mr. Mosha, I am now going to tell you the maximum

10   possible penalty for the crime to which you intend to plead

11   guilty.

12           The maximum means the most that could possibly be

13   imposed.  It does not mean that this is what you will

14   necessarily receive, but, by pleading guilty, you are exposing

15   yourself to the possibility of receiving a punishment or a

16   combination of punishments up to the maximum that I'm about to

17   describe.

18           Do you understand that?

19           THE DEFENDANT:  Yes.

20           THE COURT:  The maximum term of imprisonment for the

21   crime charged in Count One is five years, five years in prison,

22   which could be followed by up to three years on supervised

23   release.  If your sentence does include supervised release, you

24   will be subject to supervision by the probation department

25   after your release from prison.  If you should violate any

MAVCmosP

condition of that supervised release, the Court could revoke

the term of supervised release previously imposed and return

you to prison without giving you credit for time served on

post-release supervision.

In addition to these restrictions on your liberty, the

maximum possible punishment for the crime charged in Count One

includes financial penalties.  Here, the maximum allowable fine

is $250,000 or twice the profits of the criminal activity or

twice what someone other than yourself lost because of the

criminal activity, whichever is greater.

You also will be required to pay restitution to any

victims of the crime in an amount that the court sets pursuant

to 18, United States Code, Section 3663(a), and that obligation

to make restitution will be made a part of your probation, if

you get probation, or a condition of your supervised release if

your sentence includes supervised release.

In addition, by pleading guilty, you will admit to the

forfeiture allegations in the indictment, and you will agree to

forfeit a sum of money equal to $9,600 in United States

currency pursuant to Title 18 of the United States Code,

Section 982(a)(6), which is an amount representing proceeds

traceable to the commission of the offense with which you are

charged.

Finally, I am required by law to tell you that there

is an additional special assessment of $100, which is required

MAVCmosP

1  to be imposed on each count of conviction.

2          I must also advise you that because you are not a

3  citizen of the United States, your guilty plea will likely have

4  adverse consequences for your ability to remain in or return to

5  the United States, including removal, deportation, denial of

6  citizenship, and denial of admission to the United States in

7  the future.

8          Do you understand that your removal or deportation may

9  be mandatory?

10          THE DEFENDANT:  Yes.

11          THE COURT:  If that does happen, you will still be

12  bound by your guilty plea.  That is, you won't be able to

13  withdraw it, regardless of any advice you've received from your

14  counsel or others regarding the immigration consequences of

15  your plea.

16          Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Has anyone threatened you or coerced you

19  in any way to get you to plead guilty?

20          THE DEFENDANT:  No.

21          THE COURT:  I understand there's a written plea

22  agreement between you and the government.

23          Ms. Kay -- there it is.

24          It's contained in a letter, dated October the 26th,

25  addressed to your lawyer, Mr. Glozman.

MAVCmosP

1          Looking at the signature page now, it looks like it

2     was signed by your lawyer and by yourself today.

3          Let me hold up that signature page so that you can see

4     it.

5          Did you sign this plea agreement today?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Did you read it or was it read to you

8     before you signed it?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Was it explained to you in Russian?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Did you discuss it with your attorney

13    before you signed it?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Do you understand its terms?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Has anyone promised you anything or

18    offered you anything other than what's written in the plea

19    agreement to get you to plead guilty?

20         THE DEFENDANT:  No.

21         THE COURT:  It looks like you and the government have

22    reached agreement regarding the appropriate calculation of your

23    sentence under a part of our law known as the sentencing

24    guidelines.  I am looking at page 2 of your plea agreement and

25    I am seeing that you and the government have agreed that the

MAVCmosP

```
 1    appropriate guidelines sentencing range for you is 12 to 18
 2    months' imprisonment, 12 to 18 months.  In addition, you have
 3    agreed that the appropriate monetary fine in this case is
 4    $5,500, up to $55,000.
 5            Do you understand that under this agreement, neither
 6    you nor the government is allowed to argue to the sentencing
 7    judge for a calculation which is different from the one I just
 8    summarized?
 9            THE DEFENDANT:  Yes.
10            THE COURT:  Do you also understand that in this
11    agreement, you have limited your right to appeal in certain
12    respects from any sentence that may be imposed, specifically as
13    long as Judge Oetken sentences you to a prison term of no
14    longer than 15 months, any lawful sentence of supervised
15    release, and a fine no greater than $55,000, you are giving up
16    your right to challenge your sentence, whether by direct
17    appeal, a writ of habeas corpus, or otherwise?
18            THE DEFENDANT:  Yes.
19            MR. REBOLD:  I'm sorry, your Honor.  I think your
20    Honor may have inadvertently said that he can't appeal if the
21    sentence is more than 15 months.  In fact, the plea agreement
22    contemplates that he can't appeal if the sentence is equal to
23    or less than 18 months.
24            THE COURT:  You are correct.  I did misstate the
25    sentencing range agreed to in your plea agreement is from 12
```

MAVCmosP

1    months at the low end to 18 months at the high end, which

2    means, similarly, that the restrictions on your right to appeal

3    apply so long as you are sentenced to 18 months or less.

4             Do you understand that?

5             THE DEFENDANT:  Yes.

6             THE COURT:  Thank you for that correction, Mr. Rebold.

7             MR. REBOLD:  Your Honor, while we're at a pause,

8    Mr. Glozman pointed out to me just at the outset of this

9    proceeding that there's one ministerial error on page 2 of the

10   plea agreement, which I'm hoping we could just amend and

11   initial.

12            THE COURT:  What's the problem?

13            MR. REBOLD:  So this is an error on the government's

14   end.  On page 2, it correctly lists the applicable fine range.

15   This is the very last sentence on page 2 of $5,500 to $55,000,

16   but it errantly says that's the range for guidelines level 14.

17   It should actually read guidelines level 13, which is the

18   stipulated guidelines range in this case.

19            THE COURT:  I see the discrepancy.  I do see the

20   figure of 13 for the agreed upon applicable guidelines range in

21   this case and what I assume is a typo down at the bottom of the

22   page.  Let's pause for a moment and I will permit counsel to

23   make that change and initial it and I'll ask defense counsel

24   just to please make sure your client understands what is

25   happening.  The defendant should initial, as well.

MAVCmosP

1          The plea agreement is being handed back up to me with

2     that correction having been made at the bottom of page 2.

3          Mr. Mosha, do you understand why that correction was

4     made?

5          THE DEFENDANT:  Yes.  Yes, of course.

6          THE COURT:  You understand that that was a

7     typographical error at the bottom of page 2 where it says

8     guidelines level 14, it should have said guidelines level 13 to

9     be consistent with the calculation higher up on the page?

10          Do you understand that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Do you also understand that under the

13     terms of your plea agreement, with certain limited exceptions,

14     even if you later learn that the government withheld from your

15     counsel information that would have been helpful to you in

16     defending yourself at trial, you will not be able to complain

17     about that or withdraw your guilty plea on that basis?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Do you understand that the terms of your

20     plea agreement, including the calculations relating to

21     sentencing, are not binding on the sentencing judge?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Judge Oetken could reject those

24     calculations and could impose a more severe sentence than you

25     expect without permitting you to withdraw your plea of guilty.

MAVCmosP

That's because the sentencing judge is required to make his own

independent calculation of the appropriate sentencing range

under the guidelines.  He will also have the discretion to give

you a sentence below that range or above that range up to the

maximum sentence that I told you about earlier.

In addition to the guidelines and possible departures

from the guidelines, the sentencing judge will consider the

factors set forth at 18, United States Code, Section 3553(a).

In other words, the sentencing judge will pronounce whatever

sentence he believes is the appropriate sentence for you, even

if it's different from the range set forth in your plea

agreement.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  The Court will also consider a presentence

report.  That report will be prepared by the probation

department in advance of your sentencing, you and the

government will have an opportunity to review that report and

challenge the facts reported by the probation officer if you

wish to do that.

Do you understand that there is no parole in the

federal system, meaning that if you are sentenced to prison,

you will not be released early on parole?

THE DEFENDANT:  Yes.

THE COURT:  Before I go on, let me ask both counsel,

MAVCmosP

1   beginning with the government, are there any other provisions

2   in the plea agreement that you'd like me to go over with the

3   defendant?

4           MR. REBOLD:  No, your Honor.

5           THE COURT:  Defense counsel?

6           MR. GLOZMAN:  No, your Honor.

7           MR. REBOLD:  Actually, I'm sorry, your Honor, one

8   other thing.  Your Honor cited the forfeiture amount of $9,600.

9           THE COURT:  I did.

10          MR. REBOLD:  Just so that there is a record of it when

11  we send it up to the district court judge, the plea agreement

12  appends to it, which is marked Exhibit A, which is a consent

13  preliminary order of forfeiture in the amount of $9,600.

14          THE COURT:  I see that, but I see that's for the

15  district judge.

16          MR. REBOLD:  Yes.  The defendant has endorsed that

17  agreement today along with his attorney.  We'll be sending that

18  up to the district court for its endorsement.  So I want to

19  make clear on the record that that's actually the defendant's

20  signature and that he understands what it is that he signed

21  today so that the district court has what it needs when we ask

22  the district court to endorse it.

23          THE COURT:  Mr. Mosha, we talked about the forfeiture

24  in the amount of $9,600.  Do you recall that?

25          THE DEFENDANT:  Yes.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

MAVCmosP

| | |
|---|---|
| 1 | THE COURT:  And that will be imposed on you by means |
| 2 | of an order called a consent preliminary order of |
| 3 | forfeiture/money judgment.  The district judge will sign that |
| 4 | order.  It looks like you have already signed the order on the |
| 5 | last page to indicate your understanding and consent to the |
| 6 | entry of that order; is that correct? |
| 7 | THE DEFENDANT:  Yes. |
| 8 | THE COURT:  Thank you very much. |
| 9 | So I will ask you now the last question, for now. |
| 10 | Other than what's in the plea agreement itself, |
| 11 | including the forfeiture order, which is attached to it, have |
| 12 | any promises been made to you to influence you to plead guilty? |
| 13 | THE DEFENDANT:  No. |
| 14 | THE COURT:  Have any promises been made to you |
| 15 | concerning the actual sentence that you will get? |
| 16 | THE DEFENDANT:  No. |
| 17 | THE COURT:  You have been advised of the charges |
| 18 | against you, you have been advised of the possible penalties |
| 19 | you face, and you have been advised of the rights you are |
| 20 | giving up.  Is it still your intention to plead guilty to Count |
| 21 | One of the indictment? |
| 22 | THE DEFENDANT:  Yes. |
| 23 | THE COURT:  Is your plea voluntary and made of your |
| 24 | own free will? |
| 25 | THE DEFENDANT:  Yes. |

MAVCmosP

1            THE COURT:  Now would you please rise.

2            Mr. Mosha, with respect to Count One, how do you

3    plead?

4            THE DEFENDANT:  Guilty.

5            THE COURT:  You may be seated.

6            I will now ask you to tell me in your own words, if

7    possible, what it is you did that makes you guilty of that

8    crime.

9            THE DEFENDANT:  May I continue to be seated?

10           THE COURT:  If you're using notes, that's fine, you

11   can go ahead and read from them.  The interpreter may ask to

12   look at them afterwards to make sure that he gets it exactly

13   right, but I need to hear it.

14           THE INTERPRETER:  The question was whether he needs to

15   stand up.

16           THE COURT:  Sorry.  I misunderstood.

17           You may remain seated.

18           THE DEFENDANT:  On or about August of 2018 until

19   February of 2022, in Manhattan, in the State of New York, I

20   agreed with at least one person to assist with at least one

21   individual to obtain political asylum under false pretenses.

22   Sorry, actually February 2021.

23           THE COURT:  So August of 2018 to February 2021?

24           THE DEFENDANT:  Correct.

25           THE COURT:  All right.  Continue.

MAVCmosP

1          THE DEFENDANT:  In particular, on at least one

2    occasion, I advised a client to agree to an online blog and

3    express his opinions on his country, which do not reflect his

4    actual beliefs, and which was not the client's personal idea,

5    and it was done solely as the grounds to obtain political

6    asylum.  I knew that those blogs would be used as evidence to

7    apply for asylum under the form I589, and I knew that it was

8    perjury.  I personally helped to fill out the form I589 and to

9    submit it to the customs and immigration authorities.

10          THE COURT:  Anything else?

11          THE DEFENDANT:  That's it.

12          THE COURT:  Did your attorney help prepare the

13    testimony that you just gave?

14          THE DEFENDANT:  I drafted it myself, but discussed it

15    with my attorney.

16          THE COURT:  Is everything that you just told me true?

17          THE DEFENDANT:  Yes.

18          THE COURT:  You said that you advised a client to

19    create an online blog that did not reflect the client's true

20    opinions about his home country for purposes of getting him

21    political asylum; correct?

22          THE DEFENDANT:  Yes.

23          THE COURT:  And you then said that you knew those

24    blogs would be used in an asylum application and that it

25    constituted perjury.

MAVCmosP

1          THE DEFENDANT:  Yes.

2          THE COURT:  How did it constitute perjury if it was an

3     online blog?  Those are not normally under oath.

4          THE DEFENDANT:  I advised the clients to create this

5     blog and then, when we prepared the documents to submit for the

6     asylum, I signed the form.

7          THE COURT:  And when you signed that form, what did

8     you represent on the form that was false?

9          THE DEFENDANT:  That he was seeking to get political

10    asylum in the United States while, in fact, he was not or he

11    had not been persecuted in his home country.

12         THE COURT:  So you knew the contents of an immigration

13    form were false?

14         THE DEFENDANT:  Yes.

15         THE COURT:  And you signed it under penalty of perjury

16    or the client signed it or both?

17         THE DEFENDANT:  We both signed it.

18         THE COURT:  And would you identify that form for me

19    again by number.

20         THE DEFENDANT:  I589.

21         THE COURT:  And at the time that you were engaging in

22    this conduct, did you know that it was wrong?

23         THE DEFENDANT:  Yes.

24         THE COURT:  And you committed these acts or some of

25    these acts in Manhattan?

MAVCmosP

1          THE DEFENDANT:  Yes.

2          THE COURT:  Mr. Rebold, do you believe that that is

3     adequate as a factual predicate for the guilty plea?

4          If there are additional questions you'd like me to ask

5     the defendant, please let me know.

6          MR. REBOLD:  Yes, your Honor.  I think it's largely

7     there, just one or two items.

8          First, can you please just confirm with Mr. Mosha that

9     he understood that when submitting the form I589, the purpose

10    was, at least in part, to help obtain what's known as a form

11    I94, which is effectively paperwork issued by the government

12    that would allow the applicant to provide proof of authorized

13    legal stay in the United States.

14         THE COURT:  I'll see if I can get there.

15         Mr. Mosha, we've been talking about the form I589 as

16    the form which contained false information under penalty of

17    perjury.  Was the purpose of submitting that form to obtain a

18    form known as an I94 form?

19         THE DEFENDANT:  Yes.

20         THE COURT:  And did you understand that at the time?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Anything further, Mr. Rebold?

23         MR. REBOLD:  Just to dot our I's.

24         THE COURT:  That's a pun, right?

25         MR. REBOLD:  What's that?

MAVCmosP

```
 1                THE COURT:  Dot our I's?
 2                MR. REBOLD:  I missed the question, your Honor.
 3                THE COURT:  Were you making a pun, unintentionally?
 4                MR. REBOLD:  Not intentional.  I'm not that smart,
 5     your Honor.
 6                But in advising his clients, Mr. Mosha allocuted that
 7     he advised one or more clients to provide their opinions.  It
 8     wasn't, in fact, the case that he advised those clients to
 9     generate a blog that was critical of their home country as a
10     basis to argue that it would be unsafe for them to return to
11     their home country.
12                THE COURT:  Mr. Mosha, you said that at least on one
13     occasion, you advised a client to create an online blog giving
14     false opinions about their home country; correct?
15                THE DEFENDANT:  Yes.
16                THE COURT:  And the opinions that were expressed in
17     the blog, were they critical of the home country?
18                THE DEFENDANT:  Yes.
19                THE COURT:  But the client didn't really feel that
20     way, is that what you're saying?
21                THE DEFENDANT:  The client wanted to get that I94
22     form, he didn't care about the opinion.
23                THE COURT:  Mr. Rebold.
24                MR. REBOLD:  I think that's accurate.  Maybe Mr. Mosha
25     can confirm this.  I think the idea was the person was not
```

MAVCmosP

| 1 | initially predisposed to create a blog and Mr. Mosha advised. |

1  initially predisposed to create a blog and Mr. Mosha advised.

2          THE COURT:  I'll go over that again.

3          The blog was your idea, not the client's idea;

4  correct?

5          THE DEFENDANT:  That was my idea.

6          THE COURT:  Because you thought it would help him get

7  asylum?

8          THE DEFENDANT:  Yes.

9          MR. REBOLD:  And then, finally, and I believe it

10  relates to the specific application that Mr. Mosha is

11  referring, the application indicated that the applicant created

12  their own blog when, in fact -- made their own blog when, in

13  fact, it was created and posted by an individual that Mr. Mosha

14  introduced to the applicant.  So if he can just please confirm

15  he understands the person didn't even actually make their own

16  blog, that it was someone else who did it.

17          THE COURT:  In addition to putting the blog into this

18  client's head, did you also arrange for someone else to create

19  it and post it?

20          THE DEFENDANT:  Yes, the prosecution is correct.

21          THE COURT:  Could you say that in your own words,

22  please.

23          THE DEFENDANT:  Yes, I advised that client to create

24  the blog and I also introduced the client to Moshabina (ph.)

25  who helped the client to making that blog.

MAVCmosP

1          THE COURT:  And am I safe in assuming that your role

2     and this third party's role were not disclosed on the

3     immigration forms?

4          THE DEFENDANT:  I'm sorry.  I did not understand the

5     question.

6          THE COURT:  The forms that you helped the client fill

7     out, did they honestly disclose that it was your idea?

8          THE DEFENDANT:  No.  No.

9          THE COURT:  And the forms that you filled out, did

10    they honestly disclose that this third person, introduced by

11    you, was the one who set up and maintained the blog?

12         THE DEFENDANT:  No.

13         THE COURT:  Thank you.  You good, Mr. Rebold?

14         MR. REBOLD:  I am.  Thank you, your Honor.

15         THE COURT:  The government would like to make a

16    proffer, yes or no?

17         MR. REBOLD:  Sure, your Honor.

18         If Mr. Mosha proceeded to trial, the categories of

19    evidence against him would include, among other things,

20    testimony from witnesses, including law enforcement officers,

21    as well as government confidential sources, recordings of

22    meetings and conversations, including ones where Mr. Mosha and

23    others who were his coconspirators who were participants.

24    Several of those meetings occurred in Manhattan.  They included

25    incriminating emails and text messages, fraudulent form I589

MAVCmosP

1    asylum applications, and related documents and blog posts,

2    among other things.

3              THE COURT:  Thank you, Mr. Rebold.

4              Mr. Mosha, on the basis of your responses to my

5    questions and my observation of your demeanor, I find that you

6    are competent to enter a guilty plea.  I am also satisfied that

7    you understand your rights, including your right to go to trial

8    and that you are aware of the consequences of your plea,

9    including the sentence that may be imposed and the immigration

10   consequences.  I also conclude that you are voluntarily

11   pleading guilty and that you have admitted that you are guilty

12   as charged in Count One.  For these reasons, I will recommend

13   that the district judge accept your plea.

14             I will ask the government to order a copy of the

15   transcript of today's proceeding to submit to Judge Oetken

16   together with any additional paperwork that he needs to act on

17   the recommendation.

18             Has he set a sentencing date?

19             MR. REBOLD:  He has, your Honor.  It's March 1st of

20   2023 at 2:30 p.m.

21             THE COURT:  So unless the district judge changes that

22   date, you have a date to be sentenced on March the 1st, 2023,

23   at 2:30 in the afternoon.

24             I will direct the presentence report to be prepared.

25             Can you deliver the case summary for purposes of that

MAVCmosP

1    report to probation within 14 days?

2          MR. REBOLD:  Yes, your Honor.

3          THE COURT:  And counsel, can you be available for

4    interview with your client by probation within 14 days?

5          MR. GLOZMAN:  I'm starting a jury trial on Thursday,

6    so I don't think I can do it in the 14 days.

7          THE COURT:  How long is your jury trial going to last?

8          MR. GLOZMAN:  About a week and I have another

9    week-long one starting November 16th.

10          THE COURT:  How much time do you want me to give,

11    Mr. Rebold?  There is six months until sentencing.

12          MR. REBOLD:  Whatever counsel thinks is reasonable and

13    required.  If probation needs a little more time to prepare the

14    report, of course we wouldn't object.

15          MR. GLOZMAN:  Can I get 45 days to get it done?

16          THE COURT:  What's 45 days from today, Ms. Kay?

17          THE DEPUTY CLERK:  December 15th.

18          THE COURT:  It would be December 15th.

19          MR. GLOZMAN:  I appreciate the --

20          THE COURT:  Don't come back and ask for more, please.

21          MR. GLOZMAN:  I will not.

22          THE COURT:  December 15th for you and your client to

23    be interviewed by probation.  Don't let it go until the

24    Christmas holidays because then it will never get done.

25          MR. GLOZMAN:  Understood.

MAVCmosP

| | |
|---|---|
| 1 | THE COURT:  The defendant is on conditions of release, |
| 2 | yes? |
| 3 | MR. GLOZMAN:  Yes. |
| 4 | THE COURT:  Are we continuing those conditions? |
| 5 | MR. REBOLD:  Yes, your Honor, with the Court's |
| 6 | permission, of course. |
| 7 | THE COURT:  You have the Court's permission. |
| 8 | Mr. Mosha, you will remain free on bail pending your |
| 9 | sentencing.  All of the conditions which apply to you up until |
| 10 | now will continue to apply.  A violation of those conditions, |
| 11 | as I think you know, I hope you know, would have very serious |
| 12 | consequences, including revocation of bail and prosecution for |
| 13 | bail jumping. |
| 14 | In addition, if you were to commit a new crime while |
| 15 | you are released on bail, that would likely lead to a more |
| 16 | severe punishment for the new crime than you would otherwise |
| 17 | get.  Of course, if you were to commit a new crime now or |
| 18 | violate your plea agreement with the government in any way, you |
| 19 | would be subject to a revocation by the government of that plea |
| 20 | agreement with all of the consequences described in the |
| 21 | agreement. |
| 22 | Do you understand me? |
| 23 | THE DEFENDANT:  Yes, I understand it. |
| 24 | THE COURT:  Anything further from the government? |
| 25 | MR. REBOLD:  No, your Honor. |

MAVCmosP

1              THE COURT:  From the defense?

2              MR. GLOZMAN:  No, your Honor.

3              THE COURT:  Thank you, gentlemen.  We'll be adjourned.

4                                    *  *  *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25